# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

HAROLD W.J.,[1]

                                        Plaintiff,

        v.

                                                6:18-CV-146 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

PETER W. ANTONOWICZ, ESQ., for Plaintiff
LAUREN E. MYERS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

        This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4,5).

## I.    PROCEDURAL HISTORY

        Plaintiff filed an application for Disability Income Benefits ("DIB") on

September 8, 2014, alleging disability beginning July 1, 2013. (Administrative

Transcript ("T") 145-46; 154).  The application was denied initially on November 13,

2014. (T. 91-93).  Plaintiff requested a hearing, which was held by video on June 1,

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

2016 before Administrative Law Judge ("ALJ") Paul Greenberg. (T. 38-79, 95). At the hearing, the ALJ heard testimony from plaintiff and Vocational Expert ("VE") Sharon Ringenberg.[2] (T. 38-79).

In a decision dated December 19, 2016, the ALJ found that plaintiff was not disabled. (T. 20-32). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 13, 2017. (T. 1-4).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

---

[2]Plaintiff's sister, Nancy Eaton, also attended the hearing and was sworn in, however she did not provide any substantive testimony. (T. 40).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the

3

administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("...we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony...").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

As of the date of the June 1, 2016 hearing, plaintiff was 49 years old.  (T. 52). He resided alone, in a second floor, one-bedroom apartment.  (T. 53-54).  Plaintiff testified that climbing the stairs to his apartment hurt his back and caused his breathing

to "go disarray." (T. 54). He further testified that he used a walker[3] occasionally when he left the house, which was not often. (T. 55). He "couldn't go anywhere . . . without some help." *Id.*

Plaintiff was "sent away" from school in the tenth grade, and subsequently obtained his GED. (T. 56). Plaintiff's driver's license was revoked in August 2012, and he has not been licensed since.[4] (T. 55, 57-58). Plaintiff was most recently employed with ABM Janitorial as a forklift supervisor in a manufacturing facility.[5] (T. 59-60). He was let go from this position in 2011 as a result of the facility closing and reduction in force. (T. 65). Plaintiff collected unemployment benefits for the following two years. (T. 66). He testified that, while collecting unemployment benefits, he continued to look for places he thought he could work "with [his] back being a[n] issue and [his] neck." *Id.* He believes he was turned down from "a couple" jobs because he didn't have a driver's license. (T. 66).

Plaintiff did not have health insurance until 2013, at which time he commenced treatment for his back and neck. (T. 67). Plaintiff's "back and neck were a huge issue." *Id.* He testified that he had an unsteady gait, and walking in a straight line caused him to feel dizzy and unstable. (T. 69). He did not go shopping at the mall, but went to individual stores such as Dollar Tree and Walmart. *Id.* He testified that he did

---

[3]The walker was not prescribed by plaintiff's doctors, and plaintiff's use of the walker predated his May 2016 accident wherein he sustained a fractured leg. (T. 55).

[4]Plaintiff testified that his driver's license was revoked as a result of a felony conviction for driving while intoxicated. (T. 66).

[5]Plaintiff's other past relevant work included landscaping and warehouse management, which involved both clerical duties and physical labor. (T. 60-65).

not walk through the entire store. *Id.* He relied on a grocery cart to get around the store; however leaning over the cart hurt his back and pushing the cart caused his arms to go numb. *Id.* At his last place of employment, plaintiff used a golf cart to traverse the warehouse. (T. 70). When he had to walk through the warehouse he was in "real pain," but he didn't have any medication because he was uninsured. *Id.*

In May 2016,[6] plaintiff was riding his electric scooter home from the casino when he "blacked out or fell asleep," lost control of the scooter, and attempted to jump off; sustaining a fractured leg. (T. 46). Plaintiff had carpal tunnel surgery scheduled for the morning after his accident, which was postponed. (T. 68). Plaintiff testified that his right arm had a pinched nerve so severe that he "almost drop[ped] to the floor unplugging [his] light." (T. 68). He has experienced hand/arm numbness for approximately two years. (T. 68-69). His hands were "always a problem," however he never had them tested. (T. 70). Plaintiff further testified that he experienced cramps and numbness in his hands. *Id.* He did not raise his arms above his shoulders because of his symptoms. *Id.*

Plaintiff also testified that he experienced nerve pain in his lower back, and suffered from restless leg syndrome ("RLS"). (T. 52). He could not stand for long periods of time, and could not bend down. (T. 71). His doctors gave him a "device" to put his socks on, and he used a shoehorn to put on his sneakers. *Id.*

Plaintiff was diagnosed with alcoholism, but had been sober since January 5, 2014. (T. 56). He testified that once he stopped drinking, he started noticing his health

___

[6]Plaintiff's motor scooter accident occurred less than one month before the administrative hearing.

issues. (T. 52-53). Plaintiff further testified that he gained fifty pounds over the past year and a half as a side effect of his medicine and lack of activity. (T. 52).

During the VE's testimony, the ALJ proposed a hypothetical question which included the plaintiff's RFC for light work as determined by the ALJ. (T. 72). The VE testified that such a hypothetical individual would not be able to perform any of plaintiff's past jobs, based on the overhead reaching required, but identified other jobs, existing in significant numbers, that such a hypothetical individual could perform. (T. 72). The first occupation was Furniture-Rental Consultant. (T. 73). The second occupation was Cashier. *Id.* The third occupation was Electrical Accessory Assembler. *Id.* The ALJ then added a further limitation to avoid concentrated exposure to dust, odors fumes and pulmonary irritants, and the VE testified that the aforementioned jobs were still available. (T. 73).

The ALJ asked if the identified jobs would still be available, or if other light jobs were available, if the individual only had the occasional ability to finger and handle. (T. 74). The VE testified that the occupation of Furniture-Rental Consultant would still be available. *Id.* She testified that the occupation of Usher/Greeter was also consistent with the limitations expressed in the hypothetical. *Id.*

The ALJ further inquired whether jobs existed with the same limitations if the individual were also limited to sedentary work. (T. 73). The VE testified that with the limitations expressed in the first hypothetical, the occupations of Change Account Clerk, Telephone Order Clerk, and Mail Sorter would be available. (T. 74). However, these jobs would not be consistent with occasional handling and fingering. *Id.* The

occupation of Call-Out Operator and Surveillance System Monitor would be available to someone with the handling/fingering limitations. (T. 75).

The VE further testified that the hypothetical individual would not be able to sustain work at any occupation, at any exertional level, if he were to be "off task" for two hours per day because of persistent pain. *Id.* The hypothetical individual would further not be able to sustain employment in any occupation, at any exertional level, if he were to be absent from work two days per month on a recurring basis. *Id.*

The ALJ's decision and the parties' pleadings provide a detailed statement of the medical evidence of record. (T. 20-32). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. <u>THE ALJ'S DECISION</u>

The ALJ first found that plaintiff met the insured status requirement through December 31, 2016. (T. 22). The ALJ then determined that plaintiff had not engaged in substantial gainful employment since July 1, 2013, the alleged onset date. *Id.*

At step two of the sequential analysis, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, asthma, obesity, and polysubstance abuse, in partial sustained remission. (T. 22). The ALJ also noted that plaintiff suffered from the following, additional impairments, that were not severe: hypertension, thyroid disorder, herpes, restless leg syndrome, arthritis, sleep apnea, and an affective disorder. (T. 22). The ALJ opined that the aforementioned physical impairments were not severe because they were responsive to

treatment, caused no more than minimal vocationally relevant limitations, or had not lasted or were not expected to last at a "severe" level for a continuous period of twelve months, or expected to result in death. (T. 23). With respect to plaintiff's affective disorder, the ALJ determined it did not cause more than minimal limitation in the plaintiff's ability to perform basic mental work activities and was therefore nonsevere. *Id.*

The ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment at step three of the sequential analysis. (T. 24). In making this decision, the ALJ considered Listings 1.02 (Major Disfunction of a Joint); 1.04 (Disorders of the Spine); and 3.03 (Asthma). *Id.* The ALJ noted that the limitations discussed for steps 2 and 3 of the sequential evaluation were not an RFC assessment because the mental RFC used at steps 4 and 5 of the sequential evaluation required a more detailed assessment. *Id.*

The ALJ found that plaintiff had the residual functional capacity to perform light work, except with the following additional limitations: plaintiff could frequently balance; could occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; could not perform work climbing ladders, ropes or scaffolds; could not perform overhead reaching (bilateral); could perform frequent reaching outward (bilateral) and frequent handling and fingering (bilateral); and must avoid concentrated exposure to dusts, odors, fumes and pulmonary irritants. (T. 25). In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the

objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529" and Social Security Ruling ("SSR") 96-4p. (T. 25-26). Finally, the ALJ stated he considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. *Id*.

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (T. 26). The ALJ considered the medical evidence as a whole, discussing plaintiff's impairments and the medical providers who treated her. (T. 26-29). The ALJ stated that his residual functional capacity assessment was supported by objective medical imaging, pulmonary function testing, physical examinations, a lack of mental health treatment, and the plaintiff's range of activities of daily living. (T. 30).

After considering the evidence and plaintiff's RFC, the ALJ found at step four that plaintiff could not perform any of his past relevant work. *Id*. The ALJ then turned to step five of the sequential analysis. The ALJ acknowledged that the plaintiff's ability to perform unskilled light work had been compromised by additional limitations. (T. 31). To determine the extent to which these limitations eroded the unskilled light occupation base, the ALJ considered the testimony from the VE. (T. 31, 71-76). The VE testified that there were several jobs that existed in significant numbers which could be performed by a person of plaintiff's age, education and vocational background, with the RFC for light work as modified by the ALJ. (T. 31).

The VE further testified that, even if plaintiff was limited to sedentary work, there were jobs available that he could perform. *Id.* Thus, because plaintiff was capable of performing jobs which existed in significant numbers in the national economy, the ALJ found that plaintiff was not disabled. *Id.*

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ failed to properly develop the record.

2.    The ALJ erred in determining the plaintiff's RFC.

3.    The ALJ erred in failing to find the plaintiff disabled as of May 11, 2016.

(Plaintiff's Brief ("Pl.'s Br.") at 1). Defendant argues that the ALJ appropriately developed the record, and that his RFC determination is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4, 7).

For the following reasons, the court concludes that the ALJ improperly substituted his own lay judgment for competent medical evidence. The ALJ's RFC findings with respect to plaintiff's ability to carry, lift, sit, walk, and stand were not supported by substantial evidence, and the ALJ relied on VE testimony that was based on a flawed RFC, tainting the ultimate determination that plaintiff was not disabled. Accordingly, remand is warranted so that the Commissioner may obtain additional medical/opinion evidence and/or seek clarification of the existing opinion evidence, properly assess all of the medical opinion and other evidence in establishing plaintiff's RFC, and make a determination, supported by substantial evidence, as to whether plaintiff was disabled during the applicable period.

## VI.   RFC/TREATING PHYSICIAN/DUTY TO DEVELOP RECORD

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis . . . ."   A

"regular and continuing basis" means eight hours a day, for five days a week, or an

equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386, 2013 WL 252970, at

*2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)

(quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§ 404.1545.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing

*LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the

functions plaintiff is capable of performing, and may not simply make conclusory

statements regarding a plaintiff's capacities.  *Martone*, 70 F. Supp. 2d at 150 (citing

*Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp.

at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  RFC

can only be established when there is substantial evidence of each physical requirement

listed in the regulations.  *Id.*  (citing *LaPorta v. Bowen,* 737 F. Supp. 180, 183

(N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion,

describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform light work, with additional postural, reaching, handling and fingering, and environmental limitations. (T. 25). Under 20 C.F.R. §404.1567(b), light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions which indicate "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. *Id.* "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require the use of arms and hands to grasp and to hold and turn objects[.]" *Id.*

The ALJ alternatively based his determination that plaintiff was "not disabled" on an RFC to perform sedentary work, with the same additional limitations. (T. 31). Under 20 C.F.R. §404.1567(a), sedentary work is defined as follows:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

SSR 96-9p provides further elaboration on the requirements of sedentary work, including the requirement to "remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." 1996 WL 374185, at *6-7. "If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded." *Id.*

## 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a

report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. **Duty to Develop the Record**

It is well-settled that, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing inter alia *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512, 416.912 (2010)). This duty arose if the physician's report was "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. §§ 404.1512 (e)(1) and 416.912(e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (to be

codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The court applies the section in effect when the ALJ adjudicated plaintiff's claim. *Id.* The ALJ's decision in this case is dated December 19, 2016, thus, the new section applies.

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies and is designed to afford adjudicators "more flexibility." *Perrin v. Astrue*, No. 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How We Collect and Consider Evidence of Disability, *supra*). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source,
> (2) requesting additional existing records,
> (3) asking the claimant to undergo a consultative examination, or
> (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)).

Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the plaintiff's residual functional capacity. *Covey v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)).

## B. Medical Evidence

As previously discussed, the ALJ concluded that plaintiff retained the residual

functional capacity to perform light work, with additional limitations. (T. 25). In reaching the RFC determination, with respect to physical impairments, the ALJ gave "great weight" to the opinion of Tanya Perkins-Mwantuali, M.D., who performed a consultative examination of plaintiff on October 21, 2014. (T. 29, 272-276). Based on her comprehensive physical examination, Dr. Perkins-Mwantuali found that plaintiff had a reduced range of motion in his cervical and lumbar spine. (T. 274). She opined that plaintiff had "mild to moderate limitations with bending and twisting. Mild limitation with kneeling, crawling, squatting and climbing. Mild to moderate limitation with use of cervical spine. The claimant should avoid respiratory triggers." *Id.* The ALJ found Dr. Perkins-Mwantuali's "assessment of mild-to-moderate postural limits consistent with the medical evidence" and his RFC. (T. 29). The ALJ further opined that "because additional evidence was received at the hearing level documenting the claimant's ongoing spinal issues, I find that light exertional limitations are also warranted to address the claimant's difficulties with lifting and manipulation of the upper extremities." *Id.*

The ALJ gave "very little weight" to the collective opinions from treating sources, orthopedic surgeon, Dr. Distefano and Nurse Practitioner ("NP") Erin Dupree. *Id.* In a December 13, 2014 Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination ("Employability Assessment"), Dr. Distefano opined that plaintiff was "very limited" in walking,

17

standing, sitting, lifting, carrying, and stairs or other climbing. (T. 281). Dr. Distefano indicated there was no evidence of limitations with using hands. *Id.* In an October 2, 2015 Employability Assessment, NP Dupree opined that plaintiff was "moderately limited" in walking, standing, sitting, pushing, pulling, and bending; and "very limited" in lifting, carrying, stairs or other climbing. (T. 290). NP Dupree further opined there was no evidence of limitations with using hands. *Id.* Lastly, in a March 25, 2016 Employability Assessment, NP Dupree opined that plaintiff was "moderately limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, using hands, and stairs or other climbing; and "very limited" in lifting and carrying.[7] (T. 514). The Employability Assessments are in "checklist form," which the ALJ cited as one reason for affording them less than controlling weight. (T. 29, 281, 290, 514). The ALJ also indicated that "the December 2014 form from Dr. Distefano assessing very limited walking, standing, and lifting abilities is inconsistent with the medical evidence at that time." (T. 29).

With respect to plaintiff's mental health impairments, the ALJ gave substantial weight to the opinion of Jacqueline Santoro, Ph.D., who performed a consultative examination of plaintiff on October 21, 2014. (T. 29, 268-271). Based on her examination findings, Dr. Santoro opined plaintiff had no limitation for following and understanding simple directions and instructions, performing simple tasks, and

_____

[7]The "lifting, carrying" function is checked under both the "moderately limited" and "very limited" category, without any further explanation by NP Dupree.

18

maintaining attention and concentration; "mild limitations" for maintaining a regular schedule, learning new tasks, performing complex tasks, relating with others, and dealing with stress; and "moderate limitations" in making appropriate decisions. (T. 270). Dr. Santoro indicated a fair prognosis given plaintiff's history. (T. 271). The ALJ noted that plaintiff reported normal activities of daily living during the examination. (T. 29). He further indicated that Dr. Santoro's assessment "may overstate the claimant's degree of impairment, because there is no history of mental health treatment, either inpatient or outpatient." *Id.*

Finally, the ALJ gave great weight to the opinion of state agency psychological consultant E. Kamin, Ph.D. (T. 29). Dr. Kamin indicated that with respect to plaintiff's affective disorder, he exhibited mild limitations with respect to activities of daily living, difficulties in maintaining social function, and difficulties in maintaining concentration, persistence or pace. (T. 84). Dr. Kamin further indicated there were no repeated episodes of decompensation of extended duration. *Id.* Based on the "totality of evidence," Dr. Kamin opined plaintiff's psychiatric impairment was non-severe. *Id.* In relying on Dr. Kamin's opinion, the ALJ indicated it was consistent with the report of Dr. Santoro as well as the overall medical evidence, which failed to document a history of mental health treatment. (T. 29).

## C. Analysis

Plaintiff contends the ALJ failed to accord the proper weight to the opinions

offered by two treating sources, Dr. Distefano and NP Dupree. (Pl.'s Br. at 14).

Plaintiff further argues that the ALJ failed to give "good reasons" for discounting the

opinions, contrary to his obligations under the regulatory framework. (Pl.'s Br. at 14-

15).

　　As previously set forth, the ALJ reached his RFC determination after rejecting

medical opinion evidence relative to, among other things, plaintiff's ability to carry, lift,

sit, stand and walk. (T. 29, 281, 290, 514). The defendant properly argues that NP

Dupree is not an "acceptable medical source," and as such her assessments do not

warrant the same deference as a physician's opinion. *See Gibson v. Commissioner of*

*Soc. Sec.*, 5:17-CV-0827, 2018 WL 2085635, at *7 (N.D.N.Y. May 3, 2018) ("The list

of acceptable medical sources does not . . . include . . . nurse practitioners"). However,

a nurse practitioner's "observations regarding the effects of the medical condition which

has, without contradiction, been diagnosed by acceptable medical sources, is evidence

which can inform an ALJ's RFC determination, regarding the claimant's functional

limitations." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008) (citing 20

C.F.R. §§ 404.1513(d), 416.913(d)); *McConnell v. Astrue*, No. 6:03-CV-521 (TJM),

2008 WL 833968, at *16 (N.D.N.Y. Mar. 27, 2008) (noting that the opinions of a nurse

practitioner may be used by the Commissioner to show the severity of a claimant's

impairment(s) and how it affects his or her ability to work). In any event, Dr. Distefano

is an acceptable medical source under the relevant regulations and Social Security

Rulings, and it was incumbent upon the ALJ to analyze Dr. Distefano's opinion accordingly.

The ALJ afforded "very little weight" to Dr. Distefano's assessment of plaintiff's functional limitations. (T. 514). When a treating physician's opinion is not given controlling weight, the "ALJ must explicitly consider, inter alia: (1) the frequency, length, nature and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Svay v. Colvn,* 15-CV-6080, 2016 WL 922085, at *4 (W.D.N.Y. Mar. 11, 2016) (quoting *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015) (internal citations omitted)). While the ALJ need not address every factor, the ALJ's reasoning and adherence to the regulations must be clear in his decision. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required).

Here, the ALJ discounted Dr. Distefano's opinion, in part, because it was a "checklist" form that offered "little narrative or insight into the evaluator's thought processes." (T. 29). The ALJ further discounted Dr. Distefano's opinion because its assessment of "very limited walking, standing, and lifting abilities is inconsistent with the medical evidence at that time." (T. 29). The ALJ did not point to any specific

evidence, however, to support his contention that Dr. Distefano's opinion was inconsistent with the medical treatment record. By failing to identify the alleged inconsistencies between the medical evidence and Dr. Distefano's opinion, "the ALJ has failed to provide any basis for rejecting [the treating physician's] opinion, much less the requisite "good reasons" based on substantial evidence." *Marthe v. Colvin,* No. 6:15-CV-6436, 2016 WL 3514126, at *7 (W.D.N.Y. June 28, 2016) (citing, inter alia, *Ashley v. Comm'r of Soc. Sec.,* No. 5:14-CV-40, 2014 WL 7409594, at *2 (N.D.N.Y. 2014) (ALJ's "conclusory statement" that the "treating records did not support the [treating source]'s conclusion" "fail[ed] to fulfill the heightened duty of explanation" required by the treating physician rule) (other citations omitted).

A review of the medical records suggests Dr. Distefano's opinion is, arguably, consistent with the history of treatment at the time. In July 2014 plaintiff was referred by his primary care physician to neurologist Islam Hassan, DO. (T. 248). Plaintiff presented to Dr. Hassan with complaints of "low back pain and questionable radicular symptoms, as well as other paresthesias and sensation problems involving the left arm, especially when he is walking." (T. 248). Upon examination, Dr. Hassan noted plaintiff "walks normally, can heel and toe walk but tandem walk had a couple mistakes." *Id.* MRI of the lower back taken in July of 2014 indicated "moderate L4-L5-S1 disk disease with broad based disk herniation with thickening and narrowing of the neuroforaminal exit at L4-5." (T. 245, 251). After an examination on August 22,

2014, Dr. Hassan referred plaintiff for physical therapy, a nerve conduction study, and a surgical evaluation based upon his findings. (T. 245, 247).[8]

Plaintiff was seen in December 2014 by Dr. Distefano, whose treatment notes reflect a fairly normal physical examination despite plaintiff's complaints of pain, with some noted limitations at the cervical and lumbar spine.[9] (T. 309). The treatment notes at that time do not specifically opine on plaintiff's capacity to walk, stand, carry or lift; rendering it difficult to identify the ALJ's alleged "inconsistencies," without further explanation or support. In any event, this court need not determine the issue of whether the ALJ properly discounted the opinion of Dr. Distefano, because even assuming he did, the ALJ's rejection of Dr. Distefano's opinion created an evidentiary gap in the record, requiring remand. *See Wilson v. Colvin,* No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. March 6, 2015) (citing *House v. Astrue,* 2013 WL 422058, at *4 (N.D.N.Y. 2013) (ALJ's proper rejection of treating physician opinion nonetheless necessitated remand because absence of any other medical assessment created evidentiary gap)); *Gross v. Astrue,* No. 12-CV-6207P, 2014 WL 1806779, at *17 (W.D.N.Y. May 7, 2014) (quoting *Suide v. Astrue,* 371 F. App'x 684, 689-90 (7th Cir. 2010) ("it is not the ALJ's evaluation of [the treating physician's reports that requires a

_____

[8]After plaintiff mentioned that he might file for disability, Dr. Hassan advised that he did not assess functional levels or complete disability forms for patients. (T. 247).

[9]The court further notes that plaintiff's 2013 and 2014 treatment records, preceding his referrals to Dr. Hassan and Dr. Distefano, are devoid of any complaints of back pain and/or limitations, with plaintiff denying back pain on several occasions. (T. 223-244).

remand in this case[;] . . . it is the evidentiary deficit left by the ALJ's rejection of his reports–not the decision itself–that is troubling")).

With the treating physician's opinion discounted by ALJ Greenberg, the only medical expert opinion remaining with respect to plaintiff's physical impairments is that offered by consultative examiner Dr. Perkins-Mwantuali, to which the ALJ assigned "great weight." (T. 29). Plaintiff argues that Dr. Perkins-Mwantuali's use of "imprecise language such as 'mild' and 'moderate'" renders the opinion insufficient to support the ALJ's findings. (Pl.'s Br. at 14). "To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work." *Pealo v. Comm'r of Soc. Sec.*, No. 3:17-CV-0149, 2017 WL 5891772, at *5 (N.D.N.Y. Oct. 30, 2017); *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds,* 20 C.F.R. § 404.1560(c)(2) (The consultative examiner's "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [the plaintiff] can perform the exertional requirements of sedentary work."); *see also Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012).

Some courts in this Circuit have held that a consultative examiner's opinion using such vague terminology may not render the opinion useless, where the conclusion is

"well supported by [the examiner's] extensive examination[,]" or where the vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Pealo,* 2017 WL 5891772, at \*3-4 (other citations omitted); *see also Bowers v. Comm'r of Soc. Sec.*, No. 5:16-CV-1392, 2018 WL 582582, at \*5 (N.D.N.Y. Jan. 26, 2018); *Genito v. Comm'r of Soc. Sec.*, No. 7:16-CV-0143, 2017 WL 1318002, at \*8 (N.D.N.Y. Apr. 7, 2017).

Clearly, Dr. Perkins-Mwantuali's opinion contained vague language to the extent her medical source statement characterized plaintiff's limitations as "mild" and/or "moderate." (T. 275). Nevertheless, Dr. Perkins-Mwantuali's ultimate opinion as to plaintiff's limitations, *with respect to the specific functions referenced,* "is well supported by her extensive examination[.]" *Waldau v. Astrue*, No. 5:11-CV-925, 2012 WL 6681262, at \*4 (N.D.N.Y. Dec. 21, 2012) (citing *Armstrong v. Commissioner of Soc. Sec.,* No. 05-CV-1285, 2008 WL 2224943, at \*4, n. 6 (N.D.N.Y. May 27, 2008)). Upon examination Dr. Perkins-Mwantuali noted plaintiff had a normal gait with partial squat. (T. 273). Plaintiff did not require assistance changing for the exam, getting on and off the exam table, or rising from the chair. (T. 273). She assessed some limitations with flexion and extension in the cervical and lumbar spine, with cervical spine nontender to palpation. *Id.* Hip flexion and rotation were full, backward extension and abduction were normal, with abduction on the right just past midline and full on the left. *Id.* Dr. Perkins-Mwantuali also noted full range of motion in the knees

and ankles bilaterally. *Id.* Elbow and wrist exam were with full range of motion bilaterally. *Id.* She noted full strength in all four extremities. (T. 275).

Despite the foregoing, Dr. Perkins-Mwuantuali's opinion is detrimentally incomplete, as it does not address plaintiff's limitations in regard to several significant work-related activities in "light work," namely, lifting, carrying, sitting, standing and walking. *See Marthe,* 2016 WL 3514126, at *9 (the report of the consultative examiner "appears to be incomplete, since he did not rate Plaintiff's limitations in regard to several significant work-related activities in 'light' work, namely, sitting, standing, and walking."[10] "Thus, the ALJ did not have any opinion evidence from a medical expert to support key findings in his RFC assessment." *Id.* This was error, and left the ALJ in the "untenable position of interpreting raw medical data to arrive at an RFC determination, without the benefit of an expert medical opinion." *Id.*; *Straughter v. Comm'r of Soc. Sec.,* No. 17-CV-796-MJR, 2019 WL 1233129, at *4 (W.D.N.Y. Mar. 18, 2019) (finding the ALJ's RFC assessment was not supported by substantial evidence where the consultative examiner did not address specific limitations in, among other things, sitting, standing, walking, lifting and carrying").

Without Dr. Distefano's opinion, the record is devoid of any opinion from a medical source assessing plaintiff's physical limitations with respect to lifting, carrying,

---

[10]*Cf. Lewis v. Colvin*, 548 Fed. App'x 675 (2d Cir. 2013) (finding the ALJ's determination that the plaintiff could perform light work was supported by an assessment using the term "mild limitations" specifically with respect to prolonged sitting, standing, and walking).

sitting, standing or walking – significant work related activities in "light work." The treatment records themselves generally contain "bare medical findings," and "do not address or shed light on how [plaintiff's] impairments affect his physical ability to perform [these] work related functions." *Gross,* 2014 WL 1806779, at *18. Nevertheless, after discounting the opinions of Dr. Distefano and NP Dupree, the ALJ determined that plaintiff retained the full capacity to perform the inherent carrying, lifting, sitting, and walking/standing functions of light work. (T. 25). As discussed above, it is unclear how the ALJ arrived at this RFC.

Moreover, the vocational expert's testimony regarding plaintiff's alternative ability to perform sedentary work does not render the ALJ's error harmless. "An error is considered harmless where proper application of standards or consideration of evidence would not change the outcome of the ALJ's decision." *Vargas v. Comm'r of Soc. Sec.,* No. 6:16-CV-0484, 2017 WL 2838165, at *8 (N.D.N.Y. June 29, 2017) (citing *Jaghamin v. Comm'r of Soc. Sec.,* No. 1:11-CV-1273, 2013 WL 1292061, at *7 (N.D.N.Y. Mar. 28, 2013) (other citations omitted). Here, the VE testified that if all things remained the same except for the plaintiff being placed at the sedentary exertional level,[11] additional jobs would still be available such as a charge account clerk, account order clerk, and mail sorter. (T. 73-74). Much like the ALJ's modified RFC for

---

[11]Such an assumption necessarily implies the capacity to perform the full requirements for sitting, standing, and walking under the sedentary occupational base, based on the RFC as determined by the ALJ. (T. 25).

light work, his determination that plaintiff retained the capacity to perform jobs at the sedentary level is not supported by substantial evidence, as without Dr. Distefano's assessment there is no medical source opinion in the record opining on plaintiff's capacity to sit, stand or walk; particularly as to whether plaintiff could sit for six hours and stand/walk for two hours out of an eight-hour workday. In sum, the ALJ's rejection of Dr. Distefano's assessment, and reliance on an incomplete opinion from the consultative examiner, created an evidentiary deficit, and this court cannot conclude that the medical evidence of record showed such a minor physical impairment that the ALJ could "permissibly . . . render a common sense judgment about functional capacity," and "make the connection himself." *See Gross*, 2014 WL 1806779, at *18; *Wilson*, 2015 WL 10033933, at *21.

Under these circumstances, the ALJ's physical RFC assessment, and therefore his ultimate disability analysis, is not supported by substantial evidence. *See Marthe,* 2016 WL 3514126 at *9, (quoting *Balsamo v. Chater*, 142 F. 3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support the ALJ's finding as to [the plaintiff's] ability to perform sedentary work, it is well settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.")); *Wilson*, 2015 WL 10033933 at *21 (*quoting Suide,* 371 F. App'x at 690) ("when an ALJ denies benefits, she must build an accurate and logical bridge from the evidence to her conclusion, . . . and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the

record.") (other citations omitted).

With respect to plaintiff's argument that, regardless of the foregoing, a finding of "disabled" was mandated as of the plaintiff's 50th birthday,[12] this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Specifically with respect to Rule 201.10 of Appendix 2, as cited by plaintiff, it is not clear to the court, based on the record, that "plaintiff is limited to at most sedentary work," mandating a finding of disabled under the Grids. This issue, however, should be further analyzed by the ALJ based upon his re-evaluation of the medical evidence and opinions.

Accordingly, remand is appropriate to allow the ALJ to obtain a complete physical RFC assessment or medical source statement from an acceptable medical source concerning plaintiff's physical capabilities, particularly with respect to carrying, lifting, sitting, standing and walking. Admittedly, ALJ Greenberg properly discharged his duty to develop the record with respect to Dr. Distefano, who upon request specifically indicated he would not complete a medical source statement on behalf of plaintiff. (T. 377). Nevertheless, under these circumstances the ALJ could, among other things, recontact Dr. Perkins-Mwuantuali or a consulting medical expert for

---

[12]The plaintiff's date of birth is August 20, 1966. (T. 51). Plaintiff turned 50 years old on August 20, 2016; in the interim between the June 1, 2016 hearing date and the ALJ's December 19, 2016 decision.

further assessment of plaintiff's capabilities with respect to the relevant functions under the categories of "light" and/or "sedentary" work. *Straughter,* 2019 WL 1233129, at *4 (citing *Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-428, 2016 WL 2347910, at *5-6 (N.D.N.Y. May 4, 2016) (remanding for ALJ to recontact consulting examiner where examiner's opinion was too vague to rely upon in formulating RFC)).

Upon remand, the ALJ should also re-evaluate Dr. Distefano's opinion and, if the ALJ elects not to accord it controlling weight, give "good reason" for that decision in accordance with the treating source regulations. The ALJ may then reassess plaintiff's RFC, as necessary, in light of the foregoing supplementation and re-evaluation.[13]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order.

**Dated:** March 27, 2019

*Andrew T. Baxter*

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[13]On remand, the ALJ should further assess the plaintiff's claimed disability onset date, and whether substantial evidence supports a finding that plaintiff was disabled as of July 1, 2013, or for a closed period starting on some subsequent date within the covered period.